Thank you everyone. The next case is appeal number 21-3145 and it is Little Sandy Coal Company, Inc, personally by Mr. Fingarette. Am I pronouncing your name properly? You are, Your Honor. Go ahead. Good morning, Your Honor. As it may please the Court, I'm Jeremy Fingarette and I represent Little Sandy Coal and its subsidiary, the Corn Island Shipyard. It's crystal clear from a review of the statute and the regulations, in addition to the congressional record, that the tax court misapplied the legal definition of substantially all rule for the R&D credit. Had they applied the right standard, the taxpayer would have won this case. So first, I want to jump right into what is the correct standard. And I think it's also important to note that the National Association of Manufacturers laid the history out very, very well in their amicus brief. And NAM filed that brief because this opinion is affecting thousands of manufacturers around the country, in industries like aviation and automotive, defense contractors, robotics and many more, big companies and small. And so if you look at the congressional record in 1986, Congress was concerned about research for non-technical purposes. And they said, hey, companies that are not, don't have high technology, like fast food restaurants and hair stylists and advertisers, we're claiming the credit. They weren't worried about high technology companies like shipbuilders. And what they did is they changed the legal definition of qualified research. They added the substantially all rule and they put in a permitted purpose. And the permitted purpose is technical design, design around functionality, performance, reliability, quality. And what they excluded was aesthetic design, design for style, taste, cosmetic or seasonal design factor. And in overhauling it at that time, they changed the qualified research definition. The court should note they did not change at all the definition of qualified services, which is what the tax court pointed to. The tax court also pulled this definition of qualified services or part of it out of 41B, which is where we qualify qualified research expenditures. The substantially all rule is in 41D. It is in the qualified research area. So when you read both the code in 41B1C and the treasury regulation in 1.41-486, they both clearly say substantially all of the activities, which constitute elements of a process of experimentation, basically for a permitted purpose. Now, doesn't the language of 41D1C require that all of the activities must constitute elements of a process of experimentation? So, in other words, don't we need to look at all the activities instead of saying, as you do, that because more than 80% of the tanker was re-engineered and redesigned, that the whole tanker satisfies the substantially all requirement? And let me just add that what I'm talking about is you seem to want us to take your word for it, that all of the activities are part of the process of experimentation. So what we need to know is your position about the amount of proof a taxpayer must make on this. Absolutely, Your Honor. And what you're referring to, which is laid out very clearly in the code, is how do we apply this generally? And we have a finding that shows us how to apply it. Let me use the dry dock as an example, because the dry dock, they started with a blank piece of paper. They were 100% uncertain about every aspect of it. They'd never made one before. And on page 24 of the opinion, the court even says that. The court goes through and says, we have no doubt the Corn Island efforts to design the tanker and dry dock constituted elements of a process of experimentation for purposes related to function, performance, et cetera. And even goes on to say that this shouldn't be a surprise, because they'd never designed or built a dry dock before. So at the beginning of development, they had nothing. Throughout the development process, they started to iterate the design and come up with answers and come up, make design decisions. When you have a large item, like an airplane or a car or a vessel, you're not going to make all these decisions at one time. You're going to start making some design decisions. You're then going to continue to iterate. So on this, they might have decided this is going to be 400 plus feet long. But they still had to figure out how tall are the wing walls, how big are they, how much volume of pump size is to go in. But throughout, they're going to make design decisions throughout. I know the court made some issues about, oh, well, some of these decisions were made before they even started to build the vessel. Well, of course, some were made. That always happens. If you think about the design and development of an airplane, Boeing's going to have to figure out what are the size of the wings, what is the size of the fuselage. But they're going to continue to iterate, because the uncertainty in the POE goes back to the business component. And this is very important. 41D is very specific. We're looking at this four-part test at the business component level, the vessel level. And the court starts to talk about, well, how do we know that every individual part went through a POE? We don't have to show that every nut and bolt went through a POE. What you need to show, as I understand it, is a fraction that works out to greater than 80%, right? Yes, Your Honor. And can I ask you to be as specific and concrete as possible about what activities or expenses of this taxpayer on these projects fit in the numerator and in the denominator? Because the tax court basically seems to have said you just didn't meet your proof. So the easy answer to our question is all of the wages go in both the numerator and the denominator. Including production facilities? Yes, Your Honor. So you're swinging for the fences. Well, I don't see it that way, but let me explain why, Your Honor. So first of all, the substantially all rule says elements of a process of experimentation. When we look at what is the development process... Can I just stop you? Yes, Your Honor. Could you finish answering my question? I don't know if you're done yet. Before you explain why you think that's right, okay? It is everything that goes in the numerator, everything that goes in the denominator. Yes, Your Honor. That is my position. So you want all wages of everybody who did any work on any of these projects? Well, the allocated wages. Okay. Can you be more specific? Yes, Your Honor. So if you were to go and look at Exhibit 1287J, which is a wage allocation table, we didn't take all wages for all people that worked on it. Some people, we only took 8% of their wages or 10% of their wages or 50%, but all of the wages that were allocated toward the credit should go into both the numerator and the denominator. And the reason for that is that when you look at the actual application of the substantially all rule, what it looks at is technical versus non-technical development. And in this case, there was no non-technical development. When you're developing a pilot model, which is also a defined term under the regs in 174, you're using that pilot model to eliminate uncertainty. And so you have to build a pilot model, which is what the quote-unquote production people were doing, in order to iterate on that design. So it is an element of the development. What's your best authority for the pilot model production costs being included in the numerator? What's the best authority for that? The best authority is the actual substantially all rule itself, which says elements of a process of experimentation, the steps that you're taking in order to go through and eliminate all uncertainty. But it doesn't matter if we include the direct support or don't include the direct support, you would still get 100%. Because what you're excluding, the denominator is all your development time. The numerator is your development time, less aesthetic development. There's no aesthetic development here. So let me give you an example where there is some. If I'm Ford Motor Company and I'm making a Ford Mustang, I have to engineer the whole car and look at performance and fuel economy and everything else. But I'm also going to have artists that sketch it out. I'm going to build a life-size clay model so I can look at the lines. I'm going to do market surveys on like, hey, what color do consumers want so I can sell it? None of that exists here. Zero. I'm so sorry to interrupt, but I have to because I really like Judge Hamilton. I need to get a little more specific here. Look, the non-production employees, it seems, didn't track their work by project. So it seems impossible to know how much time they spent on projects, let alone if that work was spent in the processes of experimentation. For example, the taxpayer claimed that 60% of experimentation. But the record indicates that he spent time on customer service and general manager duties, which wouldn't be part of processed experimentation. The same seems to be true of the Forch brothers. Neither have any records to support the amount of time they spent on experimentation. Similar complaints could be made, I think, about the lack of time documentation for the draftsmen. So it's you who has the burden to demonstrate that the work and expenses were part of a process of experimentation. Can you help us with this? Absolutely, Your Honor. So the portions of, say, Mr. Johnson's time on things like management or things that weren't involved in the research and development, they weren't allocated to the credit. That's why Mr. Johnson only had, I think you said, a 60% allocation. It was conceded up front that 40% of his time was spent on things like managing employees that had nothing to do with the R&D credit. That's why only a fraction of his time, and that's why I referred back before to Exhibit 1287J, which is the wage allocation table that pairs down the time that employees were allocated toward a credit. The other thing I'd point this court to is that the allocation of wages was done pursuant to the Treasury regulations. The Treasury regulations in 1.41-2 specifically tell taxpayers to allocate on an annual basis and not to break them out by business component. But the most important part here is that when we're looking at the proper application of the substantially all the only thing to be removed from the denominator is aesthetic development, and there is none. So no matter if the fraction is 100,000 over 100,000 or 2 million over 2 million, it's 100% because there's no aesthetic development, which is why there was no focus on it during the trial. We have a massive record here. We produced 850,000 pages of documents. We have a week's worth of nothing in the record whatsoever about aesthetic design and development, and there's no finding from this court that there's any aesthetic development whatsoever. So whether you put the direct support in or don't, the numerator and denominator will match because the only thing you take out does it does not exist in this record. So what do you in your brief at page 25, you say the substantially all rule to determine qualified research applies only to research, not activities in direct support and supervision of research, right? There is an open question here, Your Honor. There is an open question as to whether or not direct support and supervision should come into play in the substantially all rule, and there's arguments both ways. The underlying court, the tax court, did not make a ruling or finding on that. Well, you're taking a position today that at least sounds to me as if it's in tension with what you said in your brief. When you're saying all the production, essentially anybody's work on either of the on either the tanker or the dry dock counts in both the numerator and the denominator, and that sounds much, much broader than what you said in your brief at page 25. What am I not understanding? No, you are understanding, and you're correct. That's the position that we took in the brief, but it is an open question of law that has not been decided whether or not that comes in or not. Does it matter? In this case, it does not matter. In a case like a Ford Motor Company, it could, but in this case, it does not. So why are we having the debate? Well, I mean, I'm just trying to point out to the court that that finding actually does should not have an impact on the result here. Okay. Let me go back to my original question then. Yes, your honor. What do you think specifically goes in the numerator and what specifically goes in the denominator? So I personally think that all the wages go in both. There is an argument to be made that you That's not the position you took in your brief, okay? Yes, your honor. So give me your client's position. That if you take a restrictive view and you only take the elements of just the conduct of research, they still match. And what's included? What's included would be Whose work? How much money? The design, the development. It would be roughly half of the $600,000 of employees that were not tracked. The non-production. Yes, please. The engineers. Okay. So you want engineering time in the numerator, engineering time in the denominator, and nothing else? Yes, your honor. Okay. Let's see. And let me ask you, the commissioner's brief at page 56 and 57 says, before the tax court, taxpayer asserted that Corn Island Shipping's process of experimentation broadly encompassed its entire five-step development phase. Pre-bidding an award, estimating an initial design, detailed design and engineering, fabrication and assembly, and testing and launch. Is that right? Yes, your honor. On appeal, taxpayer argues that 100% of its research constituted elements of a process of experimentation because it had already excluded non-qualified activities. Yes, your honor. What were the non-qualified activities you excluded? Those are the things that we talked about earlier. When you look at a person's allocation being reduced to 60%, like Mr. Johnson, his management or administrative roles or things like that were excluded. That's why only a portion, even though he was the lead engineer and the brains behind this project, you know, the taxpayer did not say, well, we get to take his full wage. They said, we still have to exclude those activities. And if you look at the allocated wages, most of the employees do not have 100%. You have people with 8%, 12%, 14%. So activities were taken into account in reducing them. And the activities were stipulated in the third stipulation effect. If you had this case to do over again in front of the tax court, would you, do you think you would give them more and better evidence of the time spent  I think we have a massive record here. And we have a lot of information on the process of experimentation because we had voluminous evidence. You know, we put together timelines like exhibit 1695 and 1696. We were able to show the design iterations, the engineering drawings. I think that we've put together a robust record on exactly, you know, what happened for this company and their design and development process. And if we apply the right legal standard, I think we get to the right answer. Because again, the only thing that should be excluded from this fraction is aesthetic design. And the answer is zero. So it was a non-factor. It's not something that we focus much time on trying to develop. Because when you have a fraction and you have to exclude zero from the numerator, then the numerator and denominator will always match. And there was no argument here. There were many arguments from the IRS, but none of them were around, hey, there's just aesthetic design here. They were designing and developing a dry dock that was bigger than a football field. It was over 400 feet long. We could fit this whole beautiful courtroom and multiple more of them inside this thing. You could play a football game in there. It was all about the engineering work. And just one last. It seems to me that you want us to assume that both the tanker and the dry dock were pilot models. Thus, 100% of the work on them was a process of experimentation. I'm not so sure that's correct, especially for the tanker. Of course, you've never built a dry dock before. So that seems more like a pilot model. And is that still your contention today? Well, I don't want this court to assume anything. I think it's a very important factual finding that the tax court specifically did not make as to whether or not this is a pilot model. Research concludes, per the Treasury regulations, when the functional and economic requirements are met for the vessel. And a pilot model keeps going until all the uncertainty is resolved. And these are vitally important factual findings that the tax court took its hands off and said, we don't have to get to these because they relied upon the improper application of the substantially all rule. So the tax court is the one that should be deciding that. And the tax court specifically did not in these opinions. But when R&D ended, when all the uncertainties were resolved, is a crucial finding in this matter. If the tax court wanted to come back and say, hey, all the uncertainties were resolved on day two. I don't think that's supported by the evidence. But they would have to make that type of finding if they find as we showed. And it's reflected in these timelines we pointed to that development was ongoing, design changes were ongoing, engineering calculations were ongoing all the way through the construction of the pilot model. Then it is a pilot model. But again, this is a finding of fact. And it's one that the tax court didn't make. So what if does the purpose for the construction of the vessel make a difference? I don't think so. It's a great question, though. Because what the legal standard says is you have to have uncertainty at the beginning. Here, again, the dry dock's easier question. They never made one. It was a blank page. They start iterating. And then R&D ends when all the uncertainty is resolved, which is the definition of a pilot model. So that is when the uncertainty resolves. The R&D ends. Well, OK. So this is the first tanker that you've made. Of this type. Right, of this type. And the next customer says, we want something a little different. Modify that design. And let's talk about how we do that. Is the next model also a pilot model? Not necessarily. But maybe. It sounds like your entire production then becomes, under your aggressive theories, R&D. Well, no. And there were vessels that were excluded because they were sister ships. And they were not new designs. And with regard to this particular tanker, they had done a tanker before, the Penn 80. But that's why we went through. And one of the things the IRS argued is that adaptation and duplication, that this is the same. And we went through piece by piece by piece on the vessel to show that the whole thing had been redesigned. And then showed the time that was allocated piece by piece to show the activities related back to parts of the vessel that were changed and redesigned. In response, the court came back and said, well, you didn't necessarily show a POE with every subpart of the vessel. Which, again, we don't have to show because the process of experimentation, the four-part test applies at the business component level, at the vessel level. Not down to every nut, bolt, and screw. And so when you overlay the laws as it properly should be, I mean, this client is poster child for companies that should be taking the R&D tax credit. They're a shipbuilder on the Ohio River in southern Indiana. They're one of the last because all their competitors would have been wiped out by foreign competition. These are exactly who should be taking the R&D credit. And what the court has done here by misapplying this rule, they've taken the costs that make up the credit, and there's no debate whatsoever under 41b2b that the direct support costs are qualified  They've taken the qualified costs that make up the credit and turned them into an exclusion to getting any credit whatsoever. Think if they did that to Boeing. If Boeing was designing a plane and they spend more than 20% of their time on building and fabricating the actual plane versus designing it on paper, suddenly Boeing gets no R&D credit whatsoever. That's why the National Association of Manufacturers filed their weakest brief. This is in lots of companies. I do need to ask you this, and I'll ask the commissioner this as well. It wasn't clear to me that the tax court actually took that position. That is that we would include all this direct support, the production costs, frankly, and put those in the denominator, but not in the numerator. The tax court actually didn't make a decision. They kind of said... Did or did not? Did not ultimately make a finding of whether direct support and supervision is in or out. They kind of said if it's in, and they contradict themselves, because they said if it's in, then it's not qualified research, so it doesn't go in the numerator, but then it is qualified research and goes in the denominator. Then they said, but maybe it's not in at all, in which case we don't think... They didn't actually make a finding of whether it's in and out, and I do think that's an open question of law, but I also think that regardless of whether it's in or out, since there's no aesthetic design, we're still at 100%, because the one thing that is excluded doesn't exist in this case. Nobody cares what the dry dock looks like. It's a box. It's a big U that you can play football in. It's that big. The only thing that was important is that it can submerge underwater, lift up, and raise vessels that weigh hundreds of tons, not break it in half in the process. Okay. Thank you. Yeah. Any further questions before I say okay? No? Thank you. All right. Ms. Lyon? Ms. Lyon? Yes. We gave Mr. Fingerett extra time. If you need some extra time, we're going to allow that too. Thank you very much, Your Honor. Thank you, Your Honor, and may it please the court. My name is Kathleen Lyon, and I represent the commissioner. Section 41 of the Internal Revenue Code authorizes the tax credit for qualified research expenses, which are defined by the relationship to qualified research, as defined in section 41D1. Now, from the opening argument, it appears this court has a very good grasp of what's going on in this case. That might be a false impression. Yes. We're doing our best. Let's put it that way. But we're doing our best to fool all of you. I am happy to take questions about anything you may be wondering about, but I... Okay. Oh, go ahead. Did you want to say? Oh, I was going to address certain of the points that have been talked about before. Oh, go ahead. Okay. First, it is correct that in that page 25 of that opening brief, that the taxpayer took the position that the production costs, which are direct support, aren't part of the fraction at all. And so it wouldn't be part of process of experimentation at all. That isn't the position they took below. They said everything was a process of experimentation. They're now saying that again, but in the brief, they didn't take that position. As another point that they raise, and they focus on this, in the reply brief, they make two arguments to show that they showed sufficient evidence that substantially all of the research activities were process of experimentation or elements of a process of experimentation. It's focused on one of those here. It says that no non-technical research was found here or occurred here. And therefore all of these, the technical research was process of experimentation. The fact is that if it were that simple, then I think everyone would automatically get a credit. The fact is research on technical matters may involve a process of experimentation, and it may not. They haven't cited anything in the record that shows how they met the substantially all test. What you need for that test is you need to show the universe of activities, which of those activities were research activities, and of those research activities, how much was process of experimentation. And the process of experimentation is a particular test. You resolve uncertainties differently for the substantially all test than you do under 174. And the process of experimentation test for 41D1C requires you to identify the uncertainty, identify the alternatives that are intended to eliminate the uncertainty, and then identify and conduct a process of evaluating those alternatives. There's nowhere in the opening brief or the reply brief where they cite to the record showing where they have done any of that, where they've laid that out for the court. The other argument that they make, I'm sorry. Well, I take it from the regs that something less than a formal lab notebook would be required to show the process of experimentation. Sure. Right. It can be. It doesn't have to be. Here's our question. Here are our three alternative hypotheses. Here's how we're going to test each of these. Correct. So, okay. Yes. But what the court found is that they didn't substantiate how much of of the non-production employee's time was spent on process of experimentation. It did find that there was some, but it found that not, that they hadn't shown that substantially all of it was. Okay. At the risk of showing how little I know about this, let me see if I understand this. The taxpayer is saying, in essence, everything about these projects is technical, not aesthetic. So we get to count all of our research activities as deserving, as towards the substantially all fraction. You're saying, no, it's a narrower universe of activities that has to meet this process of experimentation test. Is that right? Yes. I think what I take the taxpayer to be arguing is that there's a per se rule that if it is non-technical, then it just automatically goes into a process of experimentation. If it is technical, if it's not aesthetic. Correct. That's what I understand them to be saying. Yeah, me too. And I don't think that's, I don't know of any authority for that. And even on this record, I think you can, there's evidence that that did not, that there was technical research that did not involve the process of experimentation. Can you identify any of that? Yes. I'll direct you to at the opinion at page six, the tax court walks through a few of the things that engineer Bud Johnson did. And one thing it mentions is these wind sail calculations. Those are discussed at one point in the trial transcript and it's page, it's volume one of the transcript, page 164. And the wind sail calculations relate to the anchor and the taxpayer identified the anchor as one of these extensive changes in re-engineering that occurred on the tanker as compared to the Penn 80 tanker, the earlier vessel. And it says that at document 165 at page 10. But in the transcript explains that what these wind sail calculations are about is to determine the size of the anchor. And you use the surface area of the vessel to determine whether or not the anchor can hold the vessel in place. And so in this calculation, you take the surface area of the vessel, you put it in the calculation, the calculation spits out a number. You then look at a chart. The chart tells you what the anchor has to weigh and then you can size the anchor. So you're saying no experimentation there? Yeah, I don't see it. Okay. Yes. Boy, here I go. I'm going to join Judge Hamilton. Okay. Does this case all come down to what is properly included in the denominator? No. No. Well, does it come down to what is included in the numerator? Correct. I mean, it's, you have to be able to show that 80% was process of experimentation. And what the tax court found is that these production employee activities don't go there. So why should the pilot model production costs be excluded from the numerator? The pilot. Pilot model production costs. Why should those be excluded from the numerator? The pilot model, pilot model status doesn't tell you anything about process of experimentation. What it tells you. Doesn't the definition, doesn't the use of the word pilot, doesn't that tell us something? It tells you that something perhaps is new. It's the new, it's the first. That's the connotation. That there's an uncertainty. But under the regulations, uncertainty does not mean that resolution of the uncertainty means that you used a process of experimentation to get there. And pilot model status doesn't tell you anything about the process of experimentation in 41. If something is a pilot model, it gets you deductibility for the production costs under 174. The 41 D1C test for substantially all is a separate thing. And so what pilot model status might also get you, which is very important to the taxpayer, is that these production activities, which it says are direct support activities under 41 B2B2, those could, you know, may be includable in the credit if you have shown qualified research occurred. That's why it's important to them that this be a pilot model, but it doesn't speak to the process of experimentation. And so the next, I'm sorry. No, you continue. I was going to say, the tax court found that, that, you know, it walked through sort of this pilot model argument because taxpayer had made it and the tax court was taking their arguments seriously and seeing how it affected things here. But it found that, you know, this direct support activity isn't process of experimentation. We understood from the opening brief that the taxpayer wasn't challenging that anymore because it said that direct support isn't part of the substantially all test. And the tax court also found that even if direct support could be the process of, you know, could be process of experimentation activity, you haven't shown us what portion of the production employees time was spent on experimentation. We do know that the tax court found, and this is backed up, you know, in the record that many of the uncertainties were resolved before things went to production. They had to be because it was very expensive to not, you know, to have to reconstruct something. And so the bulk of their time appears to have been spent simply building things that were according to a design. It's not clear how they were involved in the process of experimentation. And so- So if direct support, forgive me, but if direct support and supervision of research is not research, then why include it in the denominator when you're calculating research activities? Well, and this goes to Judge Hamilton's question earlier to opposing counsel, the tax court did not make a determination that it must go in the denominator at all. Actually, pages 37, 38 of the tax court opinion, it says- it's essentially considering their argument and says, if the taxpayer is correct that the tanker is a pilot model, and if as a consequence that goes into the denominator, you're going to lose. Because you've got so many production expenses here that it's going to throw your fraction off. You're not going to get anywhere. So can I follow up on that, though? And this has to do with the amicus brief that was filed, which seems to attribute to the tax court this irrational position of you must include it in the denominator, but not the numerator. Nobody would ever qualify. I take it the commissioner would not be troubled if we were to say that's wrong. That is- that including direct support activities in the denominator, but not the numerator, would be a mistake. I mean, I hope I'm being clear about that, but- Yes, I mean- One of my goals here is to make sure we avoid screwing up the R&D tax credit generally. Correct. Well, I don't think the court has to go here, has to go there, because the tax court didn't. It didn't make a determination one way or the other of what had to be in the denominator and what didn't. One more point. What the taxpayer seems to be doing by saying, you know, this is all a process of experimentation because we've only allocated all these costs to the credit and we've excluded the things that are not qualified from the credit. I would caution the court to distinguish between 41B and 41Ds. It seems to me that the taxpayer is conflating what is includable in 41B as a qualified research expense once you have shown- once you have shown that qualified research has occurred. And they're sort of conflating that with having met the test under 41D. And that's not necessarily the case. There's not a perfect overlap there. You can get, for example, direct support costs. You can get that in the credit once you've shown this kernel of the substantially all- Correct. Experimentation. Correct. And to make that determination of substantially all, you know, we need to know the universe of activities, how much was research, how much of the research was process of experimentation, how it met that process of experimentation test. What were the alternatives? How were they doing this? And how much of that time was spent on process of experimentation? And as the court was noting earlier, there just isn't that evidence for these non-production employees. There is, you know, all we have are estimates and how much time they spent on all 11 vessels. It wasn't broken down by project or by time. The tax court just didn't have anything to latch on to to make that determination here. What do the words of which refer to in 41D1C when it says, for purposes of this section, the term qualified research means research, substantially all of the activities of which constitute elements of a process of experimentation. I think the of which is referring back to research. The research substantially all of the activities of which. So that's how I read it. I don't think there's a lurking time bomb there or something. If we were to get rid of all the jargon, if we were to restate 41D1C, do you think a fair, plain English version could be if 80% of the research involves what we call the process of experimentation, then the research is qualified research? It could have. I mean, I suppose, yes. I suppose there's an easier way to say things, but Congress doesn't always choose that. If the court has no further questions. Anyone? Let me just check notes for a moment. I have a question. The taxpayer asserted that there were no findings of research activities, which were not POE research. You agree with that statement? No. I think when the court found, well, first, when the court found that the activities involved activities which constitute a process of experimentation, but then found that, and then determined that it couldn't, that the taxpayer had not shown that 80% of those activities were process of experimentation. I think you can infer from that, that the tax court viewed some activities as non-process of experimentation research activities. I also think, what the taxpayer is saying doesn't make a lot of sense. It says that because the tax court didn't find that there were any specific non-process of experimentation research activities, therefore the research activities were 100% process of experimentation. I don't think it makes sense to say that because the tax court found that you didn't show that there was 80%, that it compels the conclusion that there was 100%. The argument seems to flip the burden of proof. Exactly. So, okay. It exactly does. And this goes back again to my point about the windsail calculations. I think the tax court did at least note those. And if you go to the record, and I think it shows that that's, you know, it could be research, but it doesn't appear to be process of experimentation. Thank you. That's all. Thank you. Yeah. I know that you certainly used up all your time, Mr. Figurette, but come on up because we may need your help. Thank you, Your Honor. I will try and be very brief. But first of all, the IRS in this case has never denied that the statute and regulations clearly say we're looking at technical versus non-technical research. And they rely heavily on the findings of the tax court as the tax court walked through and tried to differentiate direct support from the conduct of research. But all of these findings were made on the wrong legal standard. The tax court never made the findings that it needed to make of how much of this is technical research versus how much is aesthetic research and development. So without those findings, we can't properly apply the substantially all rule if they'd looked at it in the right light instead of trying to divide up the conduct of research from direct support and said technical versus non-technical. That's where I think we would have gotten the proper finding that, hey, there actually was no non-technical research here. And that at the very least is a finding that has to be made by the tax court. So what do you say to the wind sail example? So the wind sail example is actually a great example of part of the qualified process of experimentation. These little calculations she's talking about are an engineering analysis. The whole point of the R&D credit is it must be technological in nature. It must rely upon physical and biological sciences, engineering being the primary one here. As you're iterating on a ship, part of what you're trying to figure out is we need to stop the thing and we need to anchor the thing. And as the ship changes size and grows and shrinks, or you're looking at cargo loads, it's a tanker, what's going to be on it? Or it's sinking in the water. These are all going to impact how we iterate the design, including the anchor. It's one piece. It's like saying, I'm just going to look at the brakes on the car. Well, how big is the car and what's the velocity of the car? How big do the brakes need to be? What do we need? So to you, that fits. It's not just technical, but it's also experimentation. It is done through modeling in an engineering simulation. One hundred percent, it is part of the process of experimentation. And this is the problem. If you take anything, if you take anything at all, I can make it sound non-qualified to you. If SpaceX is creating the next rocket to Mars, at some point in the design and development of that rocket, there is a welder that's sitting welding pieces of metal together to make a frame for a spaceship. And you can sit there and say, hey, this guy's just welding. He's welding two pieces of metal together. Manufacturers do that every day. It's one element. It's one step in creating a rocket ship that will take humans to another planet. So if you get granular enough and you say, hey, I can play this game with anything. Software development at all points in time, software development includes a guy sitting in front of a computer typing in lines of code. That doesn't sound like experimentation. None of this is applied at that level. It's all applied at the business component level, 100 percent. And this is why, because if you break anything down to its component parts, you can make it sound non-qualified. And she's trying to make this calculation sound non-qualified. But this is an engineering calculation. This is part of the engineering analysis. Don't get that right. Your boat ain't going to stop. That's a big deal. I'd also like to say the application of the substantially all rule has already been shown. It's in the regs. In 1.41-488 example one, there's a manufacturer that's developing widgets and they change it from blue to green and they try different green paints. And the code comes out and says, yeah, this is an example of something that doesn't qualify under the substantially all rule because the design research style pays cosmetic or seasonal design factors. We also ran into this in the suitor case with the U.S. tax court where they disqualified one of the projects, the chameleon project, because it was a skin for software that only dealt with the aesthetics and look. So there's plenty of stuff out there of guidance of how the substantially all rule should be properly applied. That analysis wasn't done in this case. The U.S. tax court's findings were not done in light of what the proper application of this rule is. And had they done that, had they decided, is this a pilot model or not? Had they decided when did uncertainty end? Had they decided how much of this work was non-technical work, which is zero, then we would have come out with the right answer and the right findings to hold for this taxpayer who is absolutely positively as a barge builder on the Ohio River designing and developing 400-foot-long floating dry docks that can pick massive vessels out of the water. I mean, if this isn't qualified research, what is? If you go back to 1986 and you look at the congressional record on page 696, it specifically talks about there is some research and development which is just like, yeah, no brainer, this is going to qualify. And the example in there is an integrated circuit board. And Congress says, of course, that's going to qualify because you cannot design it without going through an iterative process of experimentation. A 400-plus-foot floating dry dock falls in that exact same category. This is a massively engineered feat that my client has put together. This is absolutely qualified research. And by applying the tax court's rule, you come out to absurd results like that mission to Mars spaceship not qualifying if they spent more than 20% of their time building the rocket as opposed to drawing it on paper. And so that's why NAM stepped in here. There are thousands of taxpayers around the country that are getting impacted by this opinion. The IRS is using it to disqualify and wipe out basically all pilot models. Because if you spend more than 20% of your time working on a pilot model, guess what? They're disallowing your credit in total. It's an absurd result, Your Honors, and it's important. And that's based on the language at 37 and 38? The IRS's approach? Yeah. They're just taking the language of this and applying this substantially. I'm asking which language because I didn't think the tax court decided that. They're using the language, absolutely, where the tax court goes through should direct support or supervision be in or out. That's at 37 and 38. You've seen a lot more documents about this case than I have. But that's where they say it would be arithmetically impossible for CIS's research to satisfy the substantially all test. That's the passage. Because here the IRS is telling us they didn't actually, that was just addressing an argument, but not adopting a position. It was, but the IRS is using that language against taxpayers. Okay. Thank you. Thank you, Your Honor. Okay. Well, thank you to one and all. Case will be taken under advisement.